UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GLORIA PONCE DE GIJON,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 5:17-cv-02083-JDE<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Gloria Ponce De Gijon ("Plaintiff"), then represented by counsel, filed a Complaint on October 11, 2017, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Dkt. 1. Counsel withdrew from the representation and Plaintiff now represents herself in this action. See Dkt. 24. Pursuant to the procedures set forth in the First Amended Case Management Order, Plaintiff and the Commissioner each filed cross-motions for judgment on the pleadings. Dkt. 29 ("Motion") and Dkt. 31 ("Cross-Motion"), respectively. The matter now is ready for decision.

# I.
# BACKGROUND

Plaintiff filed applications for DIB and SSI on February 12, 2014, alleging disability commencing on June 6, 2005. Administrative Record ("AR") 173-83. On May 13, 2016, after her application was denied initially and on reconsideration (AR 56-105), Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). AR 38-55. On August 12, 2016, the ALJ issued a written decision finding Plaintiff was not disabled (AR 19-37), finding Plaintiff had not engaged in substantial gainful employment since June 6, 2005 and suffered from the following severe impairments: cervical and lumbar degenerative disc disease, obesity, and status-post non-displaced fracture of the left distal fibular shaft. AR 24-25. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform medium work, further limited as follows: "[Plaintiff] can lift and carry fifty pounds occasionally, twenty-five pounds frequently, stand and walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day[,] . . . can frequently climb ramps and stairs, but occasionally climb ladders, ropes, and scaffolds[, and] can frequently balance, stoop, kneel, crouch, and crawl." AR 27.

The ALJ found Plaintiff was capable of performing her past relevant work as a Certified Nursing Assistant as generally performed and a Cleaner as actually and generally performed in the regional and national economy. AR 32. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act. Id. On August 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7.

# II.
# LEGAL STANDARDS

## A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where that error is harmless. Id. at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

3

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016).

If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or

regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he or she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he or she is disabled, or he or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he or she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

Plaintiff presents three issues (Motion at 3):

Issue No. 1: Whether the ALJ properly evaluated Plaintiff's ability to walk or sit;

Issue No. 2: Whether the ALJ correctly interpreted the administrative record; and

Issue No. 3: Whether Ms. Gijon can actually perform the work functions identified by the ALJ.

**A.     Objective Medical Evidence**

    1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r of Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation omitted). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

### a. Analysis: Plaintiff's Ability to Walk or Sit

With respect to Issue No. 1, Plaintiff contends the ALJ failed to properly consider Plaintiff's ability to walk or sit because the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's treating physicians' opinions. Motion at 6.

Plaintiff refers to her treating physicians throughout her Motion, but does not name them. Based on the record, Plaintiff's treating physicians appear to be: (1) Jonathan L. Allen, M.D. ("Dr. Allen"); (2) a doctor or doctors from the Pomona Medical Mission Clinic ("Pomona"); and (3) a doctor or doctors from Metropolitan Family Medical Group ("Metropolitan"). AR 330-42, 261-68, 292, 300, 305-09, 314, 319, 321-22, 324, 326, 329. The names of the

doctors from Pomona and Metropolitan are either not listed or illegible. AR 261-68, 292, 300, 305-09, 314, 319, 321-22, 324, 326, 329.

In May of 2012, Plaintiff began treatment for back pain at Pomona. AR 264-66. In September of 2012, she also sought treatment at Pomona for knee pain, ankle pain, extreme fatigue, and difficulty walking. AR 267-68. Pomona prescribed Plaintiff pain medication. AR 264-68.

On September 5, 2014, Plaintiff started treatment at Metropolitan for leg pain. AR 329. Metropolitan prescribed Plaintiff medication. Id. On September 19, 2014, Metropolitan referred Plaintiff for a Bone Densitometry test that revealed indications of blood clots and a moderate fracture risk of her femur upper neck right. AR 301-04. The same day, Metropolitan prescribed more medication. AR 326. On September 22, 2014, Metropolitan referred Plaintiff for an arthritis bone survey that revealed mild to moderate degenerative disc disease in the lower cervical spine and at L5-S1, calcific tendinitis of the right rotator cuff, and bilateral calcaneal spurs. AR 312-13. On October 21, 2014, Plaintiff returned to Metropolitan for an X-ray procedure that revealed a non-displaced fracture of the distal fibular shaft. AR 325. Metropolitan prescribed Motrin, referred Plaintiff to an orthopedist, and instructed her to continue using a wheelchair. AR 324. On January 2, 2015, Plaintiff complained of an asthma flareup, did not complain of physical limitations, and reported zero pain. AR 322. On January 5, 2015, Plaintiff continued to complain of asthma related problems and reported zero pain. AR 321. On March 1, 2015, Metropolitan opined Plaintiff had abnormal skin and head issues. AR 319. On March 8, 2015, Metropolitan referred Plaintiff for a CT scan that showed anterior degenerative spurring at C5-C7 but "otherwise an unremarkable cervical spine CT with no fracture, malalignment, or bony canal compromise." AR 315-18. On March 10, 2015 Metropolitan opined Plaintiff had an unsteady gait and zero pain; Metropolitan referred Plaintiff to a physical therapist. AR

314. On March 12, 2015, Metropolitan opined Plaintiff had abnormal extremities, a loss of balance, and zero pain. AR 309. On April 20, 2015, Metropolitan opined Plaintiff had a pain level of seven on a scale of zero to ten. AR 308. On June 18, 2015, Metropolitan opined Plaintiff had a loss of balance, an abnormal spine/lower back, and abnormal extremities. AR 307. On October 1, 2015, Metropolitan opined Plaintiff had a zero or one pain level. AR 306. On December 21, 2015, Metropolitan opined Plaintiff had a pain level of nine but reported no abnormalities. AR 305. On March 18, 2016, Metropolitan opined Plaintiff had a pain level of ten and abnormal extremities. AR 300.

From October of 2014 to May of 2015, Plaintiff sought treatment from Dr. Allen for her ankle fracture. AR 330-42. On October 24, 2014 Dr. Allen opined Plaintiff ambulated into the examination room with a normal heel to toe gait, independently, without an assistive device. AR 339-40. Dr. Allen observed Plaintiff had moderate difficulty transferring from a chair to standing and from standing to the exam table. AR 340. Dr. Allen observed good motor strength and no spinal pain; he diagnosed a lateral malleolus ankle fracture. AR 339-40. Dr. Allen recommended conservative treatment in a short leg cast. Id. After October 24, 2014, Plaintiff had four follow-up appointments for her ankle fracture. For the first three follow-ups, Plaintiff reported no pain. AR 332, 334, 336. At the last follow-up, on May 22, 2015, Plaintiff arrived without a brace or splint and reported "some swelling with walking with minor pain." AR 330. Dr. Allen opined Plaintiff had a near full range of motion, a "completely healed" ankle fracture, and no work restrictions. AR 330-31.

The ALJ did not expressly reject any of the treating physicians' opinions. AR 30-31. Instead, the ALJ gave Denise Elaine Joseph's, M.D., an examining physician, ("Dr. Joseph") opinion "little weight" because of several internal contradictions, as well as inconsistencies with the objective medical evidence.

AR 31. The ALJ accorded "great weight" to the state agency medical consultants' opinions because their opinions were consistent with the longitudinal record, which included the treating physicians' opinions. AR 31. The Court finds the ALJ properly evaluated Plaintiff's ability to walk or sit in accordance with the treating physicians' opinions and the medical evidence.

First, Plaintiff contends the "ALJ reported in his decision that Ms. Gijon had no trouble walking or sitting, despite medical evidence to the contrary" (Motion at 3); however, the ALJ did not report that in his decision. Instead, the ALJ stated Plaintiff:

> alleges in her Social Security filings that she cannot work due to variety of ailments, including chronic back pain, hypertension, asthma, depression, and anxiety. Due to these conditions, she asserted difficulty in lifting, standing (but not walking or sitting), performing all postural positions, seeing, and using her hands.

AR 28. The ALJ's statement was true, as Plaintiff did not check the boxes for walking or sitting difficulties on her Function Report; further, the ALJ did not use that statement as a basis for rejecting a treating physician's opinion. AR 230; 30-31.

Second, Plaintiff argues her medical records show she suffers from a spinal condition, chronic pain, and weakness of her lower extremities. Motion at 3. However, the ALJ did not contest that Plaintiff suffers from those conditions, stating, "the undersigned does not discount all of the claimant's complaints and recognizes that she does experience limitations. As such, the claimant's subjective pain and discomfort have been recognized and considered in the residual functional capacity in an appropriate manner." AR 30. The ALJ found the conditions did not rise to the severity asserted by Plaintiff. Id.

Third, Plaintiff contends the ALJ failed to provide specific and legitimate

reasons based on substantial evidence in the record for rejecting Plaintiff's treating physicians' opinions. Motion at 6. However, the ALJ did not reject or discount the treating physicians' opinions. AR 30-31. The ALJ accorded "great weight" to the state agency medical consultants' opinions because their opinions were consistent with the longitudinal record, which included citations to the treating physicians' opinions. AR 31. Plaintiff also argues the ALJ improperly "relied" on Dr. Joseph's record, referencing Dr. Joseph's "damaging inattention to detail." Motion at 7. However, the ALJ did not rely on Dr. Joseph's opinion; the ALJ specifically accorded "little weight" to his opinion. AR 31.

Fourth, Plaintiff takes issue with the ALJ's use of the terms "largely normal" and "benign," and his reliance upon the fact that no treating physician had ever opined that Plaintiff was unable to work. However, regardless of the use of certain terms to describe certain treatment records, the relevant legal standard is whether the ALJ's findings are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter, 806 F.3d at 492; Parra, 481 F.3d at 746. The Court finds that they are.

In sum, the Court finds the ALJ properly evaluated Plaintiff's ability to walk or sit in accordance with the treating physicians' opinions and the other medical evidence.

    b. Analysis: The ALJ's Review of the Record

With respect to Issue No. 2, Plaintiff contends the ALJ failed to properly consider the administrative record, asserting the ALJ failed to account for certain medical visits which showed consistent treatment and ongoing treatment. Motion at 8-9. The Court finds the ALJ properly considered and interpreted the record here.

As noted above, in assessing a claimant's limitations, an ALJ must consider all relevant evidence in the record, including medical records, lay

evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). However, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted)).

Here, in finding that the record did not evidence consistent treatment of Plaintiff's impairments, the ALJ noted there were "virtually no treatment records prior to March 2012" and limited treatment records until July 2014. Id. Plaintiff asserts in so finding, the ALJ ignored certain records.

In late 2003 or 2009,[1] Plaintiff sought treatment twice from Pomona. AR 262-63. Twice in late 2010, Pomona contacted Plaintiff regarding prescription medication and a change in insurance. AR 263. In June of 2012, Plaintiff sought treatment for vaginal bleeding and abnormal uterine bleeding. AR 266. In September of 2012, Plaintiff sought treatment from Pomona for knee pain, ankle pain, foot pain, difficulty walking, abnormal bleeding, and fatigue. AR 267-68. Pomona prescribed medication, had lab work done, and referred an OB-GYN. In October of 2014, Plaintiff reported to Dr. Allen that she underwent arthroscopic procedures for bilateral knees in 2007. AR 339.

The Court finds that the ALJ's finding that "virtually no treatment records prior to March 2012" (AR 30) is supported by the record. Only four records exist from before March of 2012. Two are brief "progress notes," containing a recitation of weight, blood pressure, temperature, a reference to "has cotton stuck in l[e]ft ear," a reference to insurance, and other handwritten

---

[1] These records bear manual date stamps for which the year is either 2003 or 2009. AR 262-63. Based upon the preceding page, which appears to be part of the same sequential record, it would appear 2009 is more likely, as it references a mammogram and a pap screen having each been performed in 2006. AR 261.

11

notes the significance of which is not readily apparent. AR 262-63. The other two records from 2010 contain a combined total of nineteen words and are not treatment reports. Second, the ALJ fairly found that only limited records exist up until July of 2014. From March of 2012 to July of 2014 the following records exist: five pages of Pomona medical records (AR 264-68); seven pages of psychiatric records (AR 270-276); and eight pages of medical records from Dr. Joseph, who was not a treating physician. AR 279-86. The ALJ's findings about the state of the record fairly summarized the record.

Further, the ALJ conclusion that the record did not evidence consistent treatment of Plaintiff's impairments (AR 30) is a specific and legitimate reason that supports the rejection of medical opinions. See McDonald v. Colvin, 2013 WL 5372896, at *4 (E.D. Cal. Sept. 25, 2013); Shafigi v. Astrue, 2009 WL 4267499, at *7 (C.D. Cal. Nov. 23, 2009). In addition, an ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, the ALJ properly considered, summarized, and interpreted the record in summarizing the medical evidence.

### B. Plaintiff's Subjective Symptom Testimony

In Issue No. 3, Plaintiff argues the ALJ improperly discounted her subjective symptom testimony, asserting in a conclusory fashion, that she cannot perform the work functions identified by the ALJ. In essence, Plaintiff challenges the ALJ's treatment of her subjective symptom testimony.

1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must

provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 416.929. The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin, 359 F.3d 1190, 1197 (9th Cir. 2004).

    2. Analysis

During the 2016 hearing, Plaintiff testified she last worked in 2005 and stopped working because she started losing her strength. AR 45. She testified she could not carry "anything" because of her arthritis. AR 46. She alleged she would fall "every time" she tried to walk and had difficulty sitting because of "very strong" back pain. AR 47. Plaintiff testified she could not cook, dress, bath, go grocery shopping, or use the bathroom by herself. AR 47-48.

Plaintiff completed a Function Report on March 12, 2014. AR 221-33. She indicated she did not have the ability to work because she did not have strength in her arms or legs. AR 225. She claimed she "sometimes weekly" prepares food for half an hour each time, and she could not attend to her personal care without assistance. AR 226-27. Plaintiff asserted she could do "absolutely nothing" concerning household chores. AR 227. She claimed she could drive her car and go outside to water her plants. AR 228-29. Plaintiff

13

checked boxes to indicate she had issues with lifting, squatting, bending, standing, reaching, kneeling, climbing, and using her hands; but, she did not check boxes to indicate she had issues with walking or sitting. AR 230. Plaintiff claimed she could only walk twelve feet before needing a five-minute rest. Id. Lastly, Plaintiff asserted she used a cane, walker, and wheel chair, which were all prescribed to her in 2007. AR 231.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements "about the intensity, persistence, and limiting effects of symptoms" were not "fully consistent or supported by the record," (AR 29-30) because Plaintiff's subjective symptom testimony was inconsistent with: (1) the objective evidence and other evidence in the record; (2) her conservative treatment; and (3) her activities of daily living. AR 29-30. As explained below, the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective symptom testimony.

First, the ALJ discounted Plaintiff's symptom testimony because it was not supported by objective medical evidence. AR 28-31. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. The record shows numerous objective medical findings and conclusions that conflict with Plaintiff's allegations of total disability, including: (1) physical examination findings consistently showing full range of motion of the back, upper extremity, and lower extremity, with intact strength and reflexes throughout (AR 281-83, 300, 305-06, 308-09, 312, 314, 316, 319, 321-22, 324, 326, 329-37, 339-40, 344-45, 350, 384-89, 460); (2) physical examination findings showing a normal gait (AR 283, 334, 336, 339-40); (3) no physical evidence showing muscle atrophy during the relevant period (AR 282-83, 330,

14

332, 334, 337, 345); and (4) no treating or examining medical source offering an opinion that Plaintiff was unable to work. In light of this evidence, the ALJ properly considered inconsistency with the objective medical evidence as one of at least two valid factors supporting the decision to discount Plaintiff's symptom testimony. See Burch, 400 F.3d at 681.

Second, the ALJ discounted Plaintiff's symptom testimony because she had only received conservative treatment. AR 30. The treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding an ALJ properly rejected claimant's subjective complaints where medical records showed she responded favorably to conservative treatment of physical therapy and medication). When determining whether a treatment regimen is conservative, courts must consider the condition being treated. Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017).

The ALJ noted the medical records did "not evidence consistent treatment of the claimant's impairments." AR 30. The ALJ observed there were virtually no treatment records prior to March of 2012 and limited records until July of 2014. Id. The ALJ observed Plaintiff was largely treated with analgesics (AR 30, 261-67, 292, 300, 305-09, 314, 319, 321-22, 324, 326, 329, 333), and her treating care provider noted in 2014 that she had no restrictions in activities. AR 30, 331. Lastly, the ALJ opined that "if the claimant's symptoms were so debilitating as to preclude all work activity, she reasonably would have been expected to seek some kind of additional palliative treatment." AR 30. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding an ALJ properly considered physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with "supposedly excruciating pain"). The ALJ's finding regarding conservative treatment was a clear and convincing reason to discount Plaintiff's statements

15

of a disabling impairment. See Tommasetti, 533 F.3d at 1040; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding claimant's allegations of persistent, severe pain, and discomfort were belied by conservative treatment).

Third, the ALJ also discounted Plaintiff's subjective symptom testimony based on her reported daily activities, specifically, her ability to complete household chores, prepare simple meals, dress herself, pay bills, and play with her dog. AR 30. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016.

Here, without reaching the issue, even if the ALJ erred in relying on Plaintiff's activities of daily living as a basis for discounting her symptom testimony, as long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. Batson, 359 F.3d at 1195-97; Williams v. Comm'r of Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall credibility determination.") As there are two other bases for the ALJ's

discounting of Plaintiff's subjective symptom testimony, the Court does not consider the purported basis based upon inconsistency with activities of daily living.

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, specifically, the conflict with objective medical evidence and Plaintiff's conservative treatment. Those grounds, together, are sufficient to affirm the ALJ's decision on the issue.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: October 16, 2018

_____
JOHN D. EARLY
United States Magistrate Judge